UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

In re:  }
        }
JACQUELINE B. COOLEY,  }  CASE NO.    06-40905-JJR-13
        }
        )
    Debtor(s).  }  CHAPTER: 13
        }

_____

JACQUELINE B. COOLEY,  }
        }
    Plaintiff,  }  ADV. P. NO.: 06-40122-JJR
        }
v.  }
        }
WELLS FARGO FINANCIAL,  }
        }
    Defendant.  }

## MEMORANDUM OPINION

This matter is before the Court on the Defendant's Motion to Compel Arbitration, or in the Alternative, to Stay Action Pending Arbitration (the "Motion to Compel Arbitration") (Doc. No. 4). The Motion to Compel Arbitration was filed by the Defendant in response to the Plaintiff's complaint in which she asserts claims against the Defendant for violations of the Truth in Lending Act ("TILA")[1] and Regulation Z[2] promulgated by the Board of Governors of the Federal Reserve System to implement TILA. The alleged violations arose out of a loan extended by the Defendant's

---

[1] 15 U.S.C. § 1601 *et seq.*

[2] 12 C.F.R. § 226 *et seq.*

1

assignor to the Plaintiff for the purchase of a pickup truck. Through its Motion to Compel Arbitration, the Defendant argues that the Plaintiff's claims should be submitted to binding arbitration in accordance with the terms of an arbitration agreement signed by the Plaintiff when she purchased and financed the truck.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334(b) and the order of reference by the District Court. As further discussed below, the Court determines the claims asserted in the Plaintiff's complaint are core proceedings under 28 U.S.C. § 157(b).

BACKGROUND AND ISSUES

On January 13, 2005, Jacqueline Cooley (the "Plaintiff") purchased a 2004 Dodge Ram from Jim Pruitt Ford-Mercury, Inc. (the "Dealer"). The Dealer financed $15,081.60 of the purchase price. The sale and financing were documented by a Retail Installment Contract and Security Agreement (the "Installment Contract") signed by the Dealer and the Plaintiff. The Installment Contract also contained TILA disclosures. The Installment Contract was immediately assigned by the Dealer to Wells Fargo Financial ("Wells Fargo" or the "Defendant").

On July 5, 2006, the Plaintiff filed a Chapter 13 bankruptcy petition, and her original Chapter 13 plan listed Wells Fargo's secured claim at $13,622.49, which she proposed to pay in installments of $301.23 per month. On July 11, 2006, Wells Fargo filed a proof of claim stating it held a secured claim in the amount of $14,132.08. Attached to the proof of claim were copies of the Installment Contract and the certificate of title covering the Dodge Ram. Wells Fargo was shown as the holder of the first lien on the certificate of title.

On August 22, 2006, the Plaintiff filed an amended Chapter 13 plan in which she increased Wells Fargo's claim to the amount shown in its proof of claim, and she increased the proposed

monthly installments to $312.49. On September 5, 2006, this Court entered an Order confirming the Plaintiff's amended Chapter 13 plan. However, on August 23, 2006, before confirmation, the Plaintiff initiated this adversary proceeding against Wells Fargo for violations of TILA. In her adversary complaint, the Plaintiff alleges the Installment Contract does not contain appropriate disclosures for the guaranteed asset protection insurance coverage purchased by the Plaintiff and for the finance charges contained in the credit transaction, as required by Regulation Z, 12 C.F.R. § 226 *et seq*. The complaint demands statutory damages pursuant to 15 U.S.C. § 1640(a)(2)(A) of twice the finance charge, not to exceed $1,000.00, and pursuant to 15 U.S.C. § 1640(a)(1), the complaint also demands compensatory (actual) damages of up to $275.00, plus interest, costs and attorney's fees. The Defendant's initial response to the Complaint was the Motion to Compel Arbitration. The Motion is supported by an Affidavit by the Defendant's Collections Manager. In the Motion and the Affidavit, the Defendant states that at the time the Plaintiff purchased and financed the Dodge Ram, she and the Dealer signed a Buyer's Agreement containing an arbitration clause requiring the Plaintiff and Dealer, including the Dealer's successors, transferees, and assignees, to arbitrate "any claim, dispute or controversy . . . of any kind (whether in contract, tort or otherwise) arising out of or relating to [the] . . . Installment Contract." The Defendant argues the Plaintiff should be compelled to arbitrate her claims as provided in the Buyer's Agreement and that this adversary proceeding should be dismissed or stayed pending the outcome of the arbitration. In support of its position, the Defendant states the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA") mandates the enforcement of the arbitration clause and that compelling arbitration would not cause an inherent conflict with the Bankruptcy Code. The Defendant further argues this adversary proceeding is a not a core proceeding under 28 U.S.C. § 157(b), but even if it is a core

3

proceeding, it should still be resolved through mandatory arbitration as the parties agreed under the Buyer's Agreement.

Not surprisingly, the Plaintiff opposes arbitration and avers her adversary proceeding is actually a counterclaim filed in response to the Defendant's proof of claim and is thus a core proceeding under 28 U.S.C. § 157(b)(2)(C). She points out that the one-year statute of limitations for TILA violations[3] has expired, and her claims can only be asserted "as a matter of defense by recoupment" to the Defendant's proof of claim.[4] The Plaintiff does not dispute executing the Buyer's Agreement which contained the arbitration clause. However, she argues that because her adversary proceeding is a core proceeding, it must be litigated in the bankruptcy court, and the arbitration clause should not be enforced over her objection.

The arbitration clause in the Buyer's Agreement is broad enough to encompass the TILA violations alleged in the complaint. "Courts have consistently found that claims arising under federal statutes may be the subject of arbitration agreements and are enforceable under the FAA." *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1313 (11th Cir. 2002). In addition, in consumer finance transactions where the parties have entered into arbitration agreements, TILA claims should be resolved through arbitration. *See, e.g.*, *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79 (2002). In fact, had the Plaintiff's complaint been filed in a non-bankruptcy forum, the Defendant's Motion to Compel Arbitration would be summarily granted. Thus, the issue to be decided is whether a bankruptcy court has the discretion to refuse to enforce an arbitration agreement that is otherwise

---

[3]15 U.S.C. § 1640(e).

[4]Plaintiff's Brief in Reply to Wells Fargo's Motion to Compel Alternative Dispute Resolution, pp. 3 & 4, quoting TILA § 1640(e).

4

binding on the parties because they are litigating in bankruptcy court rather than in a non-bankruptcy forum.

DISCUSSION AND LAW

Bankruptcy judges may hear and determine all core proceedings and may enter appropriate orders and judgments therein. 28 U.S.C. § 157(b). In non-core proceedings which are only related to a case under title 11, bankruptcy judges serve in an advisory capacity to the district court unless the parties agree the bankruptcy court may exercise district court jurisdiction. 28 U.S.C. § 157(c). In non-core matters, the bankruptcy court must submit proposed findings of fact and conclusions of law to the district court for its consideration and entry of a final order or judgment. *Id.* Accordingly in this case, if the Plaintiff's adversary proceeding is non-core, this bankruptcy court must submit proposed findings of fact and conclusions of law to the district court. *Mintze v. Am. Gen. Fin. Serv., Inc. (In re Mintze)*, 434 F.3d 222, 229 (3d Cir. 2006). These proposed findings and conclusions would cover not only the Plaintiff's claims but also the Defendant's Motion to Compel Arbitration, and the district court would enter the final order regarding the enforcement of the arbitration agreement.[5] On the other hand, if this adversary proceeding is core, then this bankruptcy court can make its own findings of fact and conclusions of law and can enter the appropriate final order or judgment regarding the enforcement of the arbitration agreement and all other aspects of the

---

[5] In her complaint, the Plaintiff asserts her adversary proceeding is a core proceeding. The Defendant's only response has been its Motion to Compel Arbitration and supporting briefs. Although the Defendant argues in its briefs that the Plaintiff's adversary proceeding is non-core, the Defendant has not stated whether it consents to this bankruptcy court entering a final order or judgment. Accordingly, the Court must conclude that the Defendant would not consent to a bankruptcy court entering a final order or judgment if it is ultimately concluded that this is a non-core proceeding.

5

proceeding. Thus, a determination of whether this adversary proceeding is core or non-core is critical.

The Defendant's proof of claim is tantamount to a non-bankruptcy civil action complaint seeking a judgment for, and collection of, the purchase money truck loan made to the Plaintiff. *Coxson v. Commonwealth Mortgage Co. of Am., L.P. (In re Coxson)*, 43 F.3d 189, 194 (5th Cir. 1995) ("The district court reasoned that filing a proof of claim is 'an action to collect the debt'. . . . We agree with the district court's analysis"). *See also Ferris v. Chrysler Credit Corp. (In re Ferris)*, 764 F.2d 1475 (11th Cir. 1985). Similarly, the Plaintiff's adversary complaint based on TILA violations arising out of the loan is defensive in nature and is not unlike a counterclaim. *Id.*; *St. Vincent's Hospital v. Norrell (In re Norrell)*, 198 B.R. 987 (Bankr. N.D. Ala. 1996). Thus, this adversary proceeding falls squarely within the definition of one of the categories of core proceedings described in subsection 157(b)(2)(C) of title 28, which states: "Core proceedings include . . . counterclaims by the estate against persons filing claims against the estate." Moreover, as correctly stated by the Plaintiff, this adversary proceeding must be viewed as a counterclaim because TILA violations have a one year statute of limitations unless asserted "in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action . . . ."[6] The Plaintiff argues that her adversary proceeding can also be classified as core under subsections (A), (B) and (K) of 28 U.S.C. § 157(b)(2). Perhaps, but since this Court finds that this adversary proceeding is unquestionably a counterclaim against Wells Fargo, a creditor who has filed a claim against the Plaintiff's bankruptcy estate, and is thus a core proceeding, no further inquiry is necessary to determine if this proceeding might also be correctly

---

[6]Plaintiff's Brief in Reply, p. 4, quoting 15 U.S.C. §1640(e).

6

classified as core under other subsections of 28 U.S.C. § 157(b)(2). Because it is a core proceeding, this bankruptcy court may enter a final order determining whether it has the discretion to refuse to enforce the parties' arbitration agreement.

It is well settled that under the mandate of the FAA, there is a strong federal policy favoring arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Valid arbitration agreements must be enforced unless it can be determined Congress intended to create an exception to the FAA's mandate for a particular claim. *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 227 (1987). Such an exception should be found from (1) the statute's text, (2) the statute's legislative history, or (3) "an inherent conflict between arbitration and the statute's underlying purposes." *Id*.

Courts applying the *McMahon* analysis in the bankruptcy context have found little guidance from either the text of the Bankruptcy Code or its legislative history to discern congressional intent to create an exception to the FAA in the Bankruptcy Code. *E.g.*, *Mintze, supra.* (finding no evidence of such intent in either the statutory text or the legislative history of the Bankruptcy Code); *In re Rozell*, 2006 WL 3531284, at *3 (Bankr. N.D. Ala. Dec. 7, 2006). Though it has been argued arbitration of core bankruptcy issues inherently present a conflict with the Bankruptcy Code, most courts have concluded a bankruptcy court has no discretion to refuse to enforce an arbitration agreement unless arbitration would seriously jeopardize the objectives of the Bankruptcy Code. The Second, Third, Fourth and Fifth Circuit Courts of Appeal, and the Ninth Circuit Bankruptcy Appellate Panel have all refused to apply a simple core versus non-core test in their search for a *McMahon* exception to the FAA's mandate. *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 108 (2d Cir. 2006) (while this court recognized bankruptcy courts "are more likely to have discretion to

7

refuse to compel arbitration of core bankruptcy matters," it refused to develop a bright line test); *Mintze,* 434 F.3d at 229 ("The core/non-core distinction does not ... affect whether a bankruptcy court has the discretion to deny enforcement of an arbitration agreement."); *Phillips v. Congelton, L.L.C. (In re White Mountain Mining Co., L.L.C.)*, 403 F.3d 164 (4th Cir. 2005); *U.S. Lines, Inc. v. Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. (In re U.S. Lines, Inc.)*, 197 F.3d 631, 640 (2d Cir. 1999) ("a determination that a proceeding is core will not automatically give the bankruptcy court discretion to stay arbitration"); *Ins. Co. of N. Am. v. NGC Settlement Trust & Asbestos Claims Mgmt. Corp. (In re Nat'l Gypsum)*, 118 F.3d 1056, 1067 (5th Cir. 1997) ("Although . . . 'the core/non-core distinction is a practical and workable one,' it is nonetheless too broad."); *MCI Telecomm. Corp. v. Gurga (In re Gurga)*, 176 B.R. 196 (B.A.P. 9th Cir. 1994) (finding the bankruptcy court had no discretion to refuse to enforce arbitration of non-core claims, because nothing in the legislative history or text of the Bankruptcy Code would prevent arbitration, and there is no inherent conflict between the FAA and the Bankruptcy Code). *But see Sisters of Providence Health Sys. v. Summerfield Elm Manor (In re Summerfield Pine Manor)*, 219 B.R. 637 (B.A.P. 1st Cir. 1998) (providing counter argument that statutory text giving bankruptcy courts core-issue jurisdiction demonstrates congressional intent to choose bankruptcy courts in exclusive preference to all other methods of adjudication to decide core claims; and a bankruptcy court cannot abstain from administration of a bankruptcy case and leave a state court to determine core matters, thus concluding mandatory abstention under 28 U.S.C. § 1334(c)(2) does not apply to core matters).

Each of these circuit courts determined bankruptcy courts have the discretion to refuse to enforce arbitration agreements entered into prepetition by debtors only if, after analyzing the law and circumstances of each particular proceeding, the court finds a conflict between the underlying

8

purposes of the Bankruptcy Code and resolving the proceeding by arbitration. In their analysis, the Third Circuit in *Mintze* and the Fifth Circuit in *National Gypsum* distinguished between proceedings derived exclusively from the Bankruptcy Code and those that had non-Bankruptcy Code origins. These two circuits concluded inherent conflicts between bankruptcy laws and arbitration were least likely to be found when the proceeding had non-Bankruptcy Code origins and was derived from the debtor and not the Bankruptcy Code. Stated another way, if the debtor brought the cause of action, contested matter or other dispute underlying the proceeding with him when he filed bankruptcy, no inherent conflict is likely to be found with the enforcement of contractual arbitration. However, if such cause of action, contested matter or other dispute could only exist after the bankruptcy case was commenced, then an inherent conflict exception under the *McMahon* standard is more likely to be found. For example, if a debtor brings an adversary proceeding against a creditor claiming a violation of the automatic stay imposed by 11 U.S.C. § 362(a), such a proceeding could not exist until after the bankruptcy case was commenced and should be adjudicated by the bankruptcy court even if a prepetition arbitration agreement purported to cover such a claim. *See, e.g., Merrill v. MBNA Am. Bank, N.A. (In re Merrill)*, 343 B.R. 1 (Bankr. D.Me. 2006). On the other hand, if a debtor brings an adversary proceeding claiming a creditor wrongfully repossessed its collateral prepetition, the creditor should have the right to invoke a prepetition arbitration agreement broad enough to cover such a claim.

       The Fifth Circuit in *National Gypsum* concluded the bankruptcy court had the discretion to refuse to order contractual arbitration of an adversary proceeding seeking a declaratory judgment as to whether the debtor's liability insurer was violating a Chapter 11 discharge injunction. The court found the adversary proceeding complaint was "premised on the operation of the confirmed

9

Case 06-40122-JJR    Doc 13    Filed 02/14/07    Entered 02/14/07 15:19:22    Desc Main
Document      Page 9 of 13

reorganization plan and the injunctions provided by the Bankruptcy Code." 118 F.3d at 1060. The Fifth Circuit found the adversary proceeding was a core proceeding under 28 U.S.C. § 157(b)(2). *Id.* at 1064. However, the court refused to categorically rule that arbitration of core proceedings are inherently irreconcilable with the Bankruptcy Code. *Id.* at 1067. The Fifth Circuit expressed its agreement with the Third Circuit's opinion in *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*[7] and held "that nonenforcement of an otherwise applicable arbitration provision turns on the underlying nature of the proceeding, *i.e.*, whether the proceeding derives exclusively from the provisions of the Bankruptcy Code and, if so, whether arbitration of the proceeding would conflict with the purposes of the Code." *National Gypsum*, 118 F.3d at 1067. The Fifth Circuit determined the declaratory judgment complaint raised issues central to the confirmed Chapter 11 plan and that the bankruptcy court was within its discretion to refuse to send the matter to arbitration. *Id.* Further explaining the basis of its ruling, the court stated:

> Indeed, distinguishing between those actions derived from the debtor and those created by the Bankruptcy Code explains the consistent reluctance to permit arbitration of actions brought to adjudicate *bankruptcy rights*. There can be little dispute that where a core proceeding involves adjudication of federal bankruptcy rights wholly divorced from inherited contractual claims, the importance of the federal bankruptcy forum provided by the Code is at its zenith. Arguably, these actions are simply beyond the coverage of most, if not all, arbitration provisions. But, assuming an otherwise applicable arbitration provision, the adjudication of these actions outside the federal bankruptcy forum could in many instances present the type of conflict with the purpose and provisions of the Bankruptcy Code alluded to in *McMahon*. *Id.* at 1068, *citing Hays*, 885 F.2d at 1155.

The facts considered by the Third Circuit in *Mintze* are very similar to those in the instant case. American General held a mortgage which encumbered the home of Ethel Mintze. Mintze defaulted on her mortgage, and American General commenced foreclosure proceedings. To stop the

---

[7] 885 F.2d 1149 (3d Cir. 1989).

10

foreclosure, Mintze filed a Chapter 13 bankruptcy petition. American General filed a proof of claim in Mintze's bankruptcy case, and she replied by filing an adversary proceeding against American General for violations of TILA and various state and federal consumer protection laws. The loan agreement between Mintze and American General contained an arbitration clause, and American General filed a motion with the bankruptcy court to compel arbitration of the claims asserted in the adversary proceeding. The bankruptcy court found the adversary proceeding was a core proceeding under 28 U.S.C. § 157(b) and ruled that it had the discretion to deny enforcement of the arbitration agreement. On appeal the district court agreed with the bankruptcy court, but the Third Circuit reversed.

In *Mintze*, the Third Circuit found no evidence in the statutory text or legislative history of the Bankruptcy Code of congressional intent to preclude waiver of judicial remedies through arbitration, and it then considered the third *McMahon* exception: inherent conflict. In considering the inherent conflict exception, the *Mintze* court, like the Fifth Circuit in *National Gypsum*, placed considerable emphasis on distinguishing proceedings derived exclusively from the provisions of the Bankruptcy Code and those which had non-Bankruptcy Code origins. The court found Mintze's claims were derived from TILA and other consumer protection statutes, not the Bankruptcy Code, and there was no inherent conflict with the Bankruptcy Code and permitting the enforcement of the parties' arbitration agreement.[8]

Although the Eleventh Circuit has not been called upon to resolve a dispute pitting arbitration against a bankruptcy adversary proceeding, this Bankruptcy Court believes the Eleventh Circuit

---

[8] When the *McMahon* inherent conflict test is applied as suggested by the Third and Fifth Circuits, it is doubtful that any non-core proceeding would pass the test because, by definition, non-core proceedings are not derived exclusively from the Bankruptcy Code.

11

would follow the Second, Third, Fourth and Fifth Circuits and the Ninth Circuit Bankruptcy Appellate Panel which are, for the most part, in agreement that such a dispute must be resolved by applying the *McMahon* inherent conflict test, which goes beyond a mere determination of whether the proceeding is core or non-core. More specifically, this Court believes the Eleventh Circuit would apply the *McMahon* test in same manner as the Fifth Circuit in *National Gypsum* and the Third Circuit in *Mintze*.

As already concluded, the Plaintiff's adversary proceeding against Wells Fargo is a core proceeding under 28 U.S.C. § 157(b)(2)(C). However, her claims underlying the adversary proceeding are not derived from the Bankruptcy Code; they are based on TILA.[9] The Plaintiff held these claims before she filed bankruptcy, and she brought her claims with her to bankruptcy. The Plaintiff's amended Chapter 13 plan has been confirmed, so she has taken the initial steps of reorganizing and adjusting her debts, and if she pays the Chapter 13 Trustee the required monthly installments, she will receive a discharge under Section 1328 of the Bankruptcy Code and will have achieved a financial "fresh start." If the Plaintiff recovers on the claims asserted in her adversary proceeding, the recovery will reduce the allowed claim of Wells Fargo and thus hasten the pay-out of her Chapter 13 plan, reduce her monthly payments, or possibly increase the amount distributed to other creditors. But these same results will occur whether the recovery is awarded by this Court or an arbitrator. It cannot be seriously argued that the outcome of this adversary proceeding will have a material impact on the Plaintiff's Chapter 13 case or her creditors, other than Wells Fargo.

---

[9] As mentioned above, the claims asserted in the Plaintiff's adversary proceeding must be viewed as counterclaims since they can only be asserted as a matter of defense by recoupment to the Defendant's allowed claim, because the one-year statute of limitation for TILA claims has expired.

12

Based on the above analysis, the Court finds this adversary proceeding is not derived from the bankruptcy laws, and there is no inherent conflict between enforcement of the parties' arbitration agreement and the underlying purposes of the bankruptcy laws. Thus, the Court finds it does not have the discretion to refuse to enforce the arbitration agreement.

The Defendant's Motion to Compel Arbitration is GRANTED, and this adversary proceeding, including all discovery, is STAYED pending the determination of the Plaintiff's claims by an arbitrator. Inasmuch as Wells Fargo invoked arbitration, it will be responsible for instituting the arbitration process in accordance with the parties' agreement as set forth in the Buyer's Agreement signed by the Plaintiff. The arbitration process is to commence forthwith and without delay. Any award from the arbitration will be returned to this Court for administration in the Plaintiff's bankruptcy case. A separate judgment shall be entered pursuant to Rule 9021 of the Federal Rules of Bankruptcy Procedure reflecting the foregoing opinion of the Court.

Dated: February 14, 2007

/s/ James J. Robinson
JAMES J. ROBINSON
United States Bankruptcy Judge